IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:09-CR-00045 |
| v. | ) |
| | ) |
| ROBERT LEE BENNETT, | ) |
| | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

MEMORANDUM OPINION

This matter is before the court on defendant Robert Lee Bennett's pro se motion for early termination of supervised release. ECF No. 163. For the reasons stated below, the court **GRANTS** Bennett's motion.

On December 9, 2009, Bennett pled guilty to one count of conspiracy "to manufacture, possess with intent to distribute[,] and distribute a controlled substance, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)." ECF No. 42, at 1. On April 27, 2010, Bennett was sentenced to a term of 210 months in the Bureau of Prisons ("BOP") to be served concurrently with the sentence of imprisonment imposed for related state law offenses. ECF No. 64, at 1; J., ECF No. 65, at 2. His sentence also included a five-year term of supervised release. ECF No. 64, at 1.

Bennett's 210-month sentence was reduced several times by this court. First, in October 2011, the court reduced Bennett's sentence to 180 months based on the government's motion for substantial assistance. ECF Nos. 70, 73. Second, on October 4, 2013, Bennett's sentence was further reduced to 162 months, giving him credit for 18 months served on a related state sentence. ECF Nos. 75, 76. Third, the court reduced

1

Bennett's sentence from 162 months to 143 months pursuant to Amendment 750 of the FAIR Sentencing Act. ECF No. 80, at 1, 3. Lastly, in August 2019, the court reduced Bennett's sentence to "135 months, but not less than time served" pursuant to the First Step Act of 2018. ECF No. 161, at 1. The court also reduced Bennett's term of supervised release from five years to four years. Id.

Bennett was released to supervision on August 16, 2019 and has completed more than half of his four-year term of supervised release. ECF No. 163, at 1. While on supervision, Bennett has been employed; completed all conditions of probation and parole for the Commonwealth of Virginia leading to his release from probation; paid all fines and fees in full; completed drug and alcohol treatment courses; committed no violations; started a new trucking business with his fiancée; and has recently become the father of a newborn son. ECF No. 163, at 1–2.

Among other reasons, Bennett seeks early termination so that he can join his fiancée and new baby in Martinsburg, West Virginia. In September 2021, he and his fiancée started an interstate trucking company based in Martinsburg, and Bennett would like to be closer to his family and his business.

The court sought input from Bennett's United States Probation Officer, who confirmed that Bennett has done very well while on supervision. The Probation Officer acknowledged that the government attempted to transfer Bennett to West Virginia to work and live with his family, but that West Virginia has a six-month out-of-state travel prohibition for transferees that would restrict Bennett's ability to travel and work. The

Probation Officer ultimately indicated that he has no objections to Bennett's request to terminate supervision.

The court also sought input from the United States, which filed a response in opposition to Bennett's request for early termination. ECF No. 166. The government's opposition to Bennett's request is based on his criminal history and the availability of a transfer of supervision to West Virginia. ECF No. 166, at 6. In the government's words, "[i]t is difficult to justify removing Bennett from supervision early . . . given that the only countervailing consideration is occupational inconvenience for 6 months." Id.

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking

3

conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the relevant factors set forth in § 3553(a), terminate a term of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors may be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (5) any pertinent policy statement issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Looking at the § 3553(a) factors, the court finds that the nature and circumstances of Bennett's offense are serious and weigh against early termination of supervised release. According to the PSR, Bennett participated in a conspiracy to distribute cocaine throughout the Western District of Virginia. PSR, ECF No. 67, at 4. When law enforcement officers attempted to apprehend Bennett following the completion of a drug transaction with a confidential informant, Bennett "used his vehicle to ram a police vehicle thereby creating a

4

substantial risk of bodily injury to three officers in his immediate flight to avoid arrest." Id. at 5. Officers seized over $1,000 of U.S. currency and 10.4 grams of cocaine base from Bennett's vehicle. Id. at 4. Later, Bennett's co-conspirator informed law enforcement of at least four other drug transactions she witnessed and noted that she observed Bennett in possession of two ounces of cocaine and a gun prior to his arrest. Id. Given the gravity of his offense—especially Bennett driving his vehicle into a law enforcement vehicle—this factor weighs against early termination of supervised release.

By contrast, the court finds that the defendant's characteristics and history weigh in favor of early termination of supervised release. Bennett's criminal history is serious, including three charges of possession of cocaine with intent to distribute; driving on a suspended license; other driving related offenses; and petit larceny. Id. at 8–11. But Bennett was not set up for a successful life. Though the PSR reflects that Bennett "described his childhood as fair," the traumas he experienced at least from the age of nine are anything but "fair." Id. at 14. At that age, his mother and stepfather separated, and soon after his stepfather "was convicted of murder and incarcerated." Id. Cared for by a single mother along with his several siblings and half-siblings, Bennett began witnessing drug activity at age 13 when the family "moved to a low income and high crime area of Roanoke." Id. At that young age, he began to use alcohol and marijuana, smoking daily. Id. at 14. When Bennett was 15, his mother married his second stepfather who "had alcohol and drug problems, which caused some family turbulence." Id. at 13. That turbulence included "domestic assaults between his mother and step-father." Id. During that time, Bennett went to live with his grandparents and began selling drugs to support himself. Id. By age 18, Bennett

5

"dropped out of school and his grandparents requested that he move out." Id. "As a child, Bennett was described as a follower who was easily influence[d] by others." Id.

Despite his challenging upbringing and criminal history, Bennett appears to have righted his course. He has completed all probation conditions for the Commonwealth of Virginia resulting in his release from state probation. He fully paid all fines and fees associated with his conviction. He completed drug and alcohol courses. Critically, he has maintained full employment since his release, working two jobs, and has started a trucking business. As stated above, Bennett's Probation Officer supports his request for early termination. Bennett's behavior over the last two-and-a-half years favors early termination of supervised release.

Looking at the second § 3553(a) factor, the court finds that Bennett does not appear to present any threat of committing further crimes. Likewise, the full-time employment from his trucking business and his new family responsibilities will provide him with structure to continue a successful transition to life outside of prison. The government suggests that "[i]t is perhaps due to the Court's current oversight that [Bennett] can profess to be doing so well." ECF No. 166, at 6. But for some time now, United States Probation Office has afforded Bennett a high degree of independence, "allowing [him to] travel to West Virginia in support of [his] new business." Id. at 7. Given this autonomy, the fact that Bennett completed drug and alcohol courses and has otherwise complied with all conditions of supervised release, the court believes that Bennett can continue independently living on the right side of the law. Thus, this factor weighs in favor of termination of supervised release.

In addition, there are no apparent concerns that Bennett is engaging in criminal conduct. Nor does he appear to need additional rehabilitative services as he has completed drug and alcohol classes. These factors also weigh in favor of early termination of supervised release.

The government argues that transferring Bennett's supervised release to West Virginia is a "near-perfect" solution. Id. at 4. The government reasons that this solution enables Bennett to "move to West Virginia imminently and remain under judicial supervision" with a sole limitation of "a temporary restriction on his interstate travel for the first six months." Id. Though the government states it "is not aware that there would be any restriction on his ability to work . . . intrastate" during that period, Bennett's Probation Officer views the restriction as inhibiting Bennett's ability to work. Likewise, the government offers no support for its argument that it is feasible for Bennett to do intrastate work for his apparently interstate business.[1] Indeed, Bennett stated in his motion that that he "need[s] to be able to travel to different states for [his] trucking business." ECF No. 163, at 2. The government also suggests that Bennett's business partners, fiancée (who manages other aspects of the business), or mentor could take up interstate trucking for that period. But again, the government offers no support for the feasibility of its suggestion.

Based on the foregoing, the court finds that on balance, termination of Bennett's term of supervised release is in keeping with 18 U.S.C. § 3583(e), which allows a court to terminate supervised release after a defendant has served one year, if the court is satisfied

---

[1] The government speculates that "[g]iven the depth of his fiancée's consulting experience and entrepreneurial success, his business model likely already includes contingency plans for eventualities other than supervised release, such as illness, weather delays, mechanical failures, lack of available work, and the like." ECF No. 167, at 7. But the difference here is that Bennett's work restriction would last six months—not a handful of days as in the case of weather delays or mechanical failures.

7

that such action is warranted by the conduct of the defendant and in the interest of justice.

Accordingly, Bennett's request for termination of supervised release is **GRANTED**.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: April 12, 2022

Michael F. Urbanski
Chief United States District Judge